IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SHAWN FEATHERS,<br><br>  Plaintiff,<br><br>  v.<br><br>HOUSTON,<br><br>  Defendant. | No. 2:20-CV-2208-DJC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's motion for summary judgment, ECF No. 41. Plaintiff did not file an opposition.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

///

1   moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

1    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2    produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

3    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

5    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

6    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

7    imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's first amended complaint alleges Defendant Houston violated Plaintiff's constitutional rights. ECF No. 14.  Plaintiff alleges that Defendant violated the Eighth Amendment through exposing Plaintiff to an unreasonable risk of serious harm and depriving Plaintiff of a basic human need.  Id. at 4.

Plaintiff's complaint sets forth that Plaintiff has a job working to clean blood spills and feces in the Mental Health Crisis Bed Facility.  Id. at 3.  After finishing a shift working with the chemical "Cell Block 64" and returning to the housing units, Plaintiff requested to shower. Id.  Defendant denied Plaintiff a shower and locked him in his dorm.  Id.  Plaintiff's face then started to swell and become inflamed, and Plaintiff's body became agitated and broke out in red hives.  Id.

When Defendant returned to Plaintiff's dorm, Plaintiff told Defendant that he was experiencing chemical exposure symptoms and needed to shower.  Id.  Defendant again denied Plaintiff's request.  Id.  Plaintiff made the request a third time shortly later, and for a third time Defendant denied the request.  Id.

Attached to Plaintiff's complaint is a medical report showing that Plaintiff suffered from a skin rash under both eyes, on his left forearm, and across his upper abdomen.  Id. at 15. The report states that Plaintiff denied pain or discomfort but said the rash was itching.  Id. Plaintiff was given topical hydrocortisone.  Id.

///

## II. THE PARTIES' EVIDENCE

Defendant's motion for summary judgment is supported a separate statement of undisputed facts, ECF No. 48-1, by points and authorities, ECF No. 41-2, and the declarations of Gronna, ECF No. 41-4, Durrani, ECF No. 41-5, Ebert, ECF No. 41-6, and Huston, ECF No. 41-7. Defendant attached exhibits to the various declarations.

Plaintiff offered no evidence in opposition.

The separate statement of undisputed facts lays out the following:

Plaintiff regularly used "Cell Block 64" in connection with his job duties. ECF No. 41-1 at 2. "Cell Block 64" is a disinfectant deodorant cleaner that is used at a dilution rate of 64:1 (two ounces of undiluted cleaner per one gallon of water). Id. Plaintiff frequently received training regarding the proper use of Cell Block 64, job-related safety hazards, and the appropriate use of personal protective equipment (PPE). Id.

On the day of the incident in question, Plaintiff worked in the mental health crisis bed (MHCB) facility. Id. at 3. Plaintiff cleaned a MHCB cell using Cell Block 64 dispensed from a Kaivac cleaning machine. Id. Nothing unusual happened while Plaintiff used the Kaivac cleaning machine, and Plaintiff did not get any cleaning chemicals on his clothes. Id. Plaintiff utilized full Personal Protective Equipment on the date of the incident and did not have any body parts exposed while working with "Cell Block 64." Id.

Plaintiff did not recognize that he was exposed to any chemicals during his job shift. Id. Plaintiff did not report any concerns of chemical exposure to his work supervisor on the date of the incident. Id. Plaintiff returned to housing unit J-2 sometime after 1:00 PM on the date of the incident. Id. Plaintiff did not ask custody staff for a shower upon his return. Id.

On December 26, 2019, non-party correctional staff shut down programming in housing unit J-2 at 1:30 PM. Id. The program shutdown was triggered by a non-party inmate's transfer to the administrative segregation unit, and the resulting inventorying of the inmate's property in the dayroom. Id. During the program shut down, inmates confined in housing unit J-2 were locked in their cells due to ongoing safety and security concerns. Id. at 3-4. Normal operations and access to programming, including but not limited to the use of showers,

were temporarily suspended until they could be safety restored in the building.  Id. at 4.

When Officer Huston performed his initial security check around 2:00 PM on December 26, 2019, Plaintiff asked him for a worker's shower.  Id.  Officer Huston informed Plaintiff that a worker's shower could not be accommodated at that time, due to the program shut down.  Id.  When Officer Huston subsequently passed by Plaintiff's cell, Plaintiff again asked him for a shower.  Id.  Plaintiff then informed Officer Huston that he was experiencing a chemical reaction after working with "Cell Block 64."  Id.  Plaintiff did not have any manifestations of chemical exposure symptoms that were observable and did not ask to receive medical attention.  Id.

Normal operations resumed in housing unit J-2 at approximately 3:00 PM on December 26, 2019.  Id.  Plaintiff received a shower thereafter.  Id. at 5.

A singular exposure to Cell Block 64 on December 26, 2019, and the temporary delay in receiving a shower thereafter, would not have caused the acute injures alleged by Plaintiff.  Id. at 6.

Officer Huston understood "Cell Block 64" to be a commonly used disinfectant that did not pose a risk to Plaintiff's health and safety.  Id. at 5.

Plaintiff washed his hands and arms with soap and water, both after using Cell Block 64 at his job site and then again while in his cell.  Id.  Washing an inciting agent (Cell Block 64) off with soap and water would have been an appropriate action to decontaminate Plaintiff's skin.  Id.  Medical staff would have recommended this same action if Plaintiff sought medical care for his subjective symptoms.  Id.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III. DISUCSSION

Defendant's motion for summary judgment argues Plaintiff cannot establish deliberate indifference as to his Eighth Amendment claim. ECF No. 41-2. Defendant also argues he is entitled to qualified immunity.[1] Id.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see

---

[1] The Court does not address Defendant's qualified immunity argument because his first argument prevails.

6

also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

To survive summary judgement, Plaintiff must be able to establish a genuine issue as to whether (1) Defendant's refusal to allow Plaintiff to shower for two hours was so serious such that it resulted in the denial of the minimal civilized measure of life's necessities and (2) that Defendant acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Plaintiff has offered no evidence, and Defendant's evidence shows the non-existence of a genuine issue as to either element.

Dr. Timur S. Durrani, Defendant's medical expert, stated in a declaration in support of summary judgement that a single exposure to "Cell Block 64" and the temporary delay in receiving a shower would not have caused the acute injures alleged by Plaintiff.  ECF No. 41-5 at 2.  Plaintiff, in his deposition, testified that he utilized full Personal Protective Equipment ("PPE") on the date of the incident and none of the chemical had gotten under his PPE, which included a fully zipped suit and a mask.  ECF No. 41-4 at 26-33.

If Plaintiff had sought medical treatment, he would have been advised to use soap and water to wash his skin. ECF No. 41-5 at 2.  Plaintiff had access to soap and water in his cell and at his job site. ECF No. 41-4 at 34, 44.  And indeed Plaintiff used the soap and water to wash himself.  Id.

The evidence shows that Plaintiff was not exposed to "Cell Block 64."  And even if Plaintiff had been exposed, the evidence shows that he had access to the recommended tools to treat an exposure— so temporary delay of the shower did not delay treatment to an exposure.  Plaintiff cannot demonstrate a genuine issue as to whether temporary deprivation of a shower caused his injuries, and so cannot show that the deprivation was so serious such that it resulted in the denial of the minimal civilized measure of life's necessities.

/ / /

Additionally, the evidence cannot sustain a genuine issue as to whether Defendant acted unnecessarily and wantonly for the purpose of inflicting harm. Defendant believed "Cell Block 64" to be safe. ECF No. 41-7 at 3. Plaintiff told Defendant that he was itching. ECF No. 41-4 at 41. But Plaintiff did not have any manifestations of chemical exposure symptoms that were observable, and he did not ask for medical attention. ECF No. 41-4 at 47; ECF No. 41-7 at 3. Plaintiff was denied access to a shower because of an unrelated event that caused his dorm to be shut down. ECF No 41-7 at 2. The evidence cannot sustain that Defendant acted unnecessarily and wantonly for the purpose of inflicting harm, as the evidence shows Defendant was not aware Plaintiff was suffering any serious effects from "Cell Block 64" and that Defendant denied Plaintiff a shower because of an unrelated safety matter that was locked down the entire dorm.

## IV. CONCLUSION

Based on the foregoing, the Undersigned orders and recommends that Defendant's unopposed motion for summary judgment, ECF No. 41, be GRANTED.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these amended findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 16, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE